UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

PREFERRED CARE, INC., et al.,        )
                                     )
        Plaintiffs,                  )
                                     )   Civil Case No. 14-cv-107-JMH
v.                                   )
                                     )
KARL BELCHER,                        )
                                     )   **MEMORANDUM OPINION & ORDER**
        Defendant.                   )
                                     )
                                     )

                        ***

This matter is before the Court on several motions: Defendant Karl Belcher's Motion to Dismiss [DE 4; Response at DE 6] and Plaintiffs' Motion to Compel Arbitration and Motion to Enjoin Defendant [DE 5; Response at DE 7; Reply at DE 8]. These motions are ripe for consideration.

As an initial matter, Defendant seeks dismissal of this matter for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to join a necessary party pursuant to Fed. R. Civ. P. 12(b)(7). Defendant also asks this Court to abstain from exercising any jurisdiction that it might have under the *Colorado River* abstention doctrine, which permits a federal court to dismiss a cause pending before it in favor of a parallel state court action in certain circumstances. Finally, Defendant asks this Court to dismiss Plaintiffs' claim pursuant to 12(b)(6) for failure to state a claim, on the

grounds that the subject ADR Agreement is invalid and unenforceable. Plaintiff contends, in contrast, that the Court has jurisdiction over this matter, that the Court should not abstain, and that the ADR Agreement is valid and should be enforced, as a matter of law.

For the reasons set forth below, Defendant's Motion will be denied, and Plaintiffs' Motions will be granted.

## I.

Karl Belcher was a resident of Stanton Nursing and Rehabilitation Center f/k/a Stanton Nursing Center, located at 31 Derickson Lane, Stanton, Powell County, Kentucky 40380, from 2011 until July of 2013, except for times when he was hospitalized. On January 31, 2014, Defendant filed in the Circuit Court of Powell County, Kentucky, Case No. 14-CI-0020, a negligence, medical negligence, corporate negligence, and violation of long term care resident's rights, against Stanton Health Facilities, LP d/b/a Stanton Nursing and Rehabilitation Center; Stanton Health Facilities GP, LLC; Preferred Care Partners Management Group, L.P.; PCPMG, LLC; Preferred Care, Inc. d/b/a Preferred Care of Delaware, Inc.; Kentucky Partners Management Group, LLC; Thomas Scott; and Stanton Administrator Thomas B. Davis. In his complaint filed in Powell Circuit Court, Belcher claims that, while he resided at Stanton, he suffered physical and emotional injuries due to inadequate care

2

and that his health and physical condition deteriorated beyond that caused by the normal aging process.

On March 10, 2014, the defendants in the Powell County Circuit Court Case filed an Answer to Karl Belcher's Complaint in the Powell County Circuit Court Case. The State Court defendants' Answer asserted that the State Court claims are subject to a binding Alternative Dispute Resolution Agreement ("ADR Agreement"). On March 21, 2014, the State Court corporate defendants from the Powell County Circuit Court Case filed a Complaint with this Court, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity and seeking substantially the same relief from this Court regarding arbitration as they had demanded in State court; namely, to find the ADR Agreement to be valid and enforceable; to compel Defendant to arbitrate the State Court claims; and to enter an order enjoining the Defendant from pursuing his claims in the State Court Action.

For the following reasons, Defendant moves this Court to dismiss Plaintiffs' Complaint.

## II.

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This requires a

3

consideration of and a ruling upon the merits of a claim. In determining whether dismissal is warranted under Rule 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). If, in doing so, the Court determines that the case is legally insufficient, it will be dismissed,

The procedure under a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) is quite different. At issue in a Rule 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case. In this context, the trial court may proceed as it never could under 12(b)(6)—no presumptive truthfulness attaches to either party's allegations and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the party claiming jurisdiction will have the burden of proof that jurisdiction does in fact exist. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)(internal citations omitted).

**III.**

As an initial matter and in the face of Defendant's Motion to Dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and (7), the Court concludes that it has jurisdiction

4

to consider this matter.  Defendant argues that there is no jurisdiction because Plaintiffs have failed to join a necessary party under Rule 19 and, once the citizenship of that necessary party is taken into account, there is a lack of subject-matter jurisdiction under 28 U.S.C. § 1332 because (1) the parties will not be of diverse citizenship and (2) the Federal Arbitration Act will not, alone, create a federal question which would confer jurisdiction under 28 U.S.C. § 1331 in this matter upon this Court.[1]  As explained below, the Court disagrees with this analysis.

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133–35 (6th Cir. 1996);

---

[1] Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4. That is, the FAA "'bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis' [for access to a federal forum] over the parties' dispute." *Vaden v. Discover Bank,* 556 U.S. 49, 59 (2009) (quoting *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576, 581–82 (2008) (internal quotation marks omitted)); *see also Moses. H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983). Section 4 of the FAA "neither expand[s] nor contract[s] federal subject matter jurisdiction." *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 747 n. 7 (8th Cir. 1986). Thus, a petitioner proceeding under § 4 must assert an independent source of subject matter jurisdiction. Here, the plaintiffs assert only that the Court has diversity jurisdiction pursuant to 18 U.S.C. § 1332.

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States," and Plaintiff contends that this Court has jurisdiction based on the diversity of the parties. In the instant action, there is no dispute that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Further, there is no dispute that Defendant here is a resident of Kentucky and that each of the named Plaintiffs in this action is a citizen of another state.

However, Thomas B. Davis, the nursing home administrator who is named as a defendant in Belcher's state complaint but not as a party in the present matter, is a citizen of Kentucky. Defendant claims that complete diversity of citizenship among the parties cannot be maintained because, while Davis is not named as a plaintiff in this action, he is an indispensable party under Fed. R. Civ. P. 19 and his joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1). If lack of subject-matter jurisdiction is raised in a motion to dismiss, the plaintiff "bears the burden of proving

6

jurisdiction ... to survive the motion." *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir .2002). However, the plaintiff will "survive [a] motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996)).

The existence of a non-diverse party in the related state court action does not, on its own, destroy diversity:

> Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

*GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 13-106-HRW, 2014 WL 1333204, *3 (E.D. Ky. Mar. 28, 2014).

Accordingly, the Court first considers whether Davis is even a necessary party. He is a necessary party if, "in [his]

absence, complete relief cannot be accorded among those already parties" or "[he] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [his] absence may . . . , as a practical matter, impair or impede [his] ability to protect the interest" or his absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

Belcher's claims against the defendants in the state court action, which group of defendants includes the various Plaintiffs to this action and Davis, are based on the same occurrence—the alleged negligence at the nursing home that resulted in injury to him. The arbitration agreement, by its terms, governs claims against the corporate parties as well as the administrators and its enforceability with respect to all parties, including Davis, is a matter pending before the state court. If this Court and the state court were to reach different conclusions concerning the enforceability of the arbitration agreement, Belcher could be placed in a position where he was obliged to arbitrate the claims with some of the parties covered by the agreement and to proceed in litigation before the state court with respect to another party, Davis, who is arguably covered by the agreement. Thus, Belcher is subject to a substantial risk of incurring inconsistent obligations

because of Davis' interest in this matter.   Accordingly, the Court concludes that Davis is a necessary party to the action.

As the joinder of Davis, a citizen of Kentucky, would destroy diversity jurisdiction, the Court must determine whether he is "indispensable." Thus, the Court must balance the following factors: (1) the extent to which a judgment rendered in his absence might prejudice him or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in his absence would be adequate; and (4) whether Plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b).

Belcher argues that he will not be afforded complete relief in the absence of Davis as a Plaintiff to this action. He asserts that there could then be a duplication of proceedings and that he will be unduly and unnecessarily prejudiced if he is subjected to arbitration with just the named Plaintiffs. The Court is not persuaded of his position.   The duplication of proceedings alone in these circumstances is not a disqualifying factor.   "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Belcher's] decision to file a suit naming [Plaintiffs and Davis] in state

court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (6th Cir. 2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that, while there is a risk that the state court will reach an inconsistent outcome regarding the arbitration agreement as it relates to Davis, it is a low risk. This does not rise to the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

Finally, Belcher argues that an adequate remedy exists in state court if this Court dismisses the case. This is true, but the factors, when balanced, do not militate in favor of the conclusion that Davis is an indispensable party. It follows that the failure to join him does not warrant dismissal. Ultimately, the requirements of diversity of jurisdiction have been met, and this Court has subject matter jurisdiction over this case.

**IV.**

Next, the Court considers whether it should, as Defendant contends, abstain from exercising its jurisdiction in favor of the state court proceedings. Several other courts in this

10

district have recently concluded that abstention is inappropriate in circumstances substantially similar to those presented in this matter. *See Richmond Health Facilities-Kenwood, LP v. Nichols*, Civil Action No. 5:14-141-DCR, 2014 WL 4063823 (E.D.Ky. Aug. 13, 2014); *Brookdale Senior Living, Inc. v. Caudill*, Civil Action No. 5:14-098-DCR; 2014 WL 3420783 (E.D.Ky. July 10, 2014); *GGNSC Vanceburg, LLC, v. Hanley*, Civil Action No. 0:13-106-HRW, 2014 WL 1333204 (E.D.Ky. Mar. 28, 2014); *GGNSC Vanceburg, LLC, v. Taulbee*, Civil Action No. 5:13-cv-71-KSF, 2013 WL 4041174 (E.D.Ky. Dec. 19, 2013). In each instance, there was an allegation of negligence in care provided at a nursing home. The party claiming injury filed a civil action in state court, and the nursing home then asserted that the state court claims were subject to the binding arbitration agreement between the parties and demanded the dispute be referred to arbitration and the state court case dismissed with prejudice. In each instance, the nursing home then filed a complaint in the federal court, alleging federal jurisdiction by way of diversity (and omitting the nursing home administrators, arguably subject to the arbitration agreement but without diverse citizenship, as a party in the federal court action), arguing that the arbitration agreement was valid and enforceable, and asking the federal court to compel the party claiming injury to arbitrate his or her state claims and to

11

enjoin him or her from further pursuing his or her claims in state court.

In *Taulbee*, the late Karl S. Forester of this Court summed up abstention doctrine as follows:

> Even where federal courts properly have jurisdiction over the matter, a district court may abstain from exercising its jurisdiction and refrain from hearing a case in limited circumstances, *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir.2009). This exception is narrow because a district court presented with a case that arises under its original jurisdiction has a "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by the coordinate branches of government and duly invoked by litigants. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Id*. at 813.

*Taulbee*, 2013 WL 4041174 at *2. Abstention is appropriate under certain limited circumstances, as follows:

> Under Colorado River, the threshold issue is whether there are parallel proceedings in state court. *Crawley v. Hamilton Cnty Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). Those factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2)

12

> whether the federal forum is less convenient
> to the parties; (3) avoidance of piecemeal
> litigation; (4) the order in which
> jurisdiction was obtained; (5) whether the
> source of governing law is state or federal;
> (6) the adequacy of the state court action
> to protect the federal plaintiff's rights;
> (7) the relative progress of state and
> federal proceedings; and (8) the presence or
> absence of concurrent jurisdiction. *Id.*

*Id.*

The analysis is straightforward. No one disputes that the present action is parallel to the state court proceedings; thus, the Court applies the eight factor test. *See id.* at \*3 (citing *PaineWebber*, 276 F.3d at 206). As the Court sees the matter, only two factors favor abstention. First, it is possible that the federal forum is less convenient to the parties, since Lexington is some distance from Stanton (in which the injuries allegedly occurred and near which the Court presumes that most of the witnesses reside). *See id.* at \*3. Second, the state court action is no doubt adequate to protect the federal plaintiffs' rights because, under the Supremacy Clause, a state court is bound by the requirements of the FAA. *Id.*

The others favor federal jurisdiction, keeping in mind that "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. 1, 16, (1983). The parties agree that the case does not involve real property or the assumption of jurisdiction over any res or

13

property.    Thus,  the  first  factor  weighs  in  favor  of  the
exercise  of  federal  court  jurisdiction  and  against  abstention.
*Id.* (citing *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th
Cir.  1998)).  The  third  factor  offers  little  to  no  support  for
Defendant's  argument  in  favor  of  abstention,  since  the  desire  to
avoid  piecemeal  litigation  is  insufficient  to  overcome  a  strong
federal  policy  in  favor  of  arbitration  or,  in  this  instance,  the
exercise  of  jurisdiction.    *PaineWebber*,  276  F.3d  at  207.

     With  respect  to  the  order  in  which  jurisdiction  was
obtained  by  each  court,  "priority  should  not  be  measured
exclusively  by  which  complaint  was  filed  first,  but  rather  in
terms  of  how  much  progress  has  been  made  in  the  two  actions."
*Moses  H.  Cone*,  460  U.S.  at  21.  A  call  to  the  Powell  Circuit
Clerk  reveals  that  little  has  happened  since  the  time  this
matter  was  removed  to  this  Court  and  the  present  motions  were
filed.    An  answer  was  filed,  warning  order  attorneys  were
appointed,  and,  mostly  recently,  the  state  court  judge  signed  an
order  approving  the  reports  of  warning  order  attorneys  appointed
in  that  matter.    The  instant  action  was  filed  just  over  a  month
after  Mr.  Belcher  filed  in  state  court.  As  Judge  Forester  noted
in  *Taulbee*,  "[t]he  passage  of  [a  month]  is  too  insignificant  to
justify  the  use  of  abstention,  especially  when  both  cases  remain
in  the  early  pleading  stage."  *Taulbee*,  2013  WL  4041174  at  *4.
Thus,  the  fourth  factor  weighs  against  abstention.    For  much  the

14

same reason, the seventh factor—the relative progress of the state and federal proceedings—weights against abstention as there has been limited progress in the state court to date.

As to the fifth factor, regarding the source of law, while it is true that state law will govern the standard contract defenses Belcher raises against the arbitration agreement, the Federal Arbitration Act governs the enforceability of arbitration agreements generally and applies here. The FAA presents a "liberal federal policy favoring arbitration agreements" that must be taken into account even when state-law issues are presented. *Moses H. Cone*, 460 U.S. at 24. It follows that this factor weighs in favor of federal court jurisdiction or, at the very least, not against it in this instance.  The final factor under *Colorado River* is the presence or absence of concurrent jurisdiction. While there is concurrent jurisdiction, this fact only marginally favors abstention, if at all. As noted above, the governing law is the FAA, which "expresses a preference for federal litigation," The existence of concurrent jurisdiction "is insufficient to justify abstention" under the circumstances. *PaineWebber*, 276 F.3d at 208–09.

On balance, the circumstances in this matter do not present the "exceptional" circumstances necessary to compel this Court to abandon the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*,

424 U.S. at 817–1". Accordingly, this Court declines to abstain.

## V.

Finally, Defendant asks the Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and deny Plaintiffs' Motion to Enforce Arbitration Agreement because Plaintiffs' fail to state a claim upon which relief may be granted because the underlying ADR Agreement is invalid and unenforceable as (1) it does not evidence a contract involving interstate commerce and (2) is unconscionable and void as against public policy.[2] The Court has carefully considered each of these arguments and concludes that they are without merit.

Even assuming that Belcher correctly contends that the care provided to him occurred only within the borders of the Commonwealth of Kentucky, this is a case which clearly falls within the scope of the FAA. The FAA applies to "contract[s] evidencing a transaction involving commerce," 9 U.S.C. § 2, and extends to transactions "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice ... subject

---

[2] Defendant's Memorandum in support of his Motion to Dismiss also suggests that Plaintiffs' claim for relief fails because it is impossible to perform under the Arbitration Agreement according to its terms. The Court sees no particular argument in support of this argument in his Memorandum and assumes, therefore, that it was presented in conjunction with the other arguments discussed above and resolved by this Court's decision. Otherwise, in the absence of argument, the Court considers this argument waived.

to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (quoted in *Nichols*, 2014 WL 4063823 at *8; *Brookdale Sr. Living Inc. v. Stacy*, 27 F.Supp.3d 776, 791–92 (E.D.Ky. 2014)). "The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Id.* (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273–274 (1995)).

Interstate commerce is interpreted broadly and healthcare is an economic activity that represents a general practice subject to federal control. *See Ping v. Beverly Enterprises, Inc.,* 376 S.W.3d 581, 589 (Ky.2012) (citing *Alafabco.,* 539 U.S. at 56–57). Courts in the Eastern District of Kentucky, as well as others, have found that similar nursing home residency agreements are contracts "evidencing a transaction involving commerce," under the FAA. *See Nichols*, 2014 WL 4063823 at *8; *Caudill,* 2014 WL 3420783, at *9; *see also Stacy,* 27 F.Supp.3d at 791–92; *Hanley,* 2014 WL 1333204 at *8–9; *GGNSC Taulbee,* 2013 WL 4041174 at *10–11 (remarking that courts have looked to the acceptance of Medicare as evidence of interstate commerce); and *Warner*, 2013 WL 6796421 at *7–8.

The arbitration agreement in this case is a component of a larger contract that evidences a transaction involving

17

interstate commerce. *See Stacy*, 27 F.Supp.3d at 791-92. As other courts have pointed out, "[t]he food, medicine, and durable medical supplies that [the plaintiffs] provided must come from somewhere." *Id.* at *14 (quoting *GGNSC Louisville Hillcreek, LLC v. Warner*, Civil Action No. 3:13-cv-752-H, 2013 WL 6796421, *8 (W.D.Ky. Dec. 19, 2013)). Accordingly, Belcher's argument that the arbitration agreement is unenforceable under the FAA because it does not evidence a transaction involving interstate commerce is without merit.

Defendant argues next that the procedural and substantive nature of the ADR Agreement renders it unconscionable. Unconscionability, in the Commonwealth of Kentucky, is a doctrine that exists as a narrow exception to the rule that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). It is "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* (citing *Louisville Bear Safety Serv., Inc. v. South Central Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978)).

Defendant complains that, in this instance, "[t]he ADR Agreement is a mass-produced, boiler-plate, pre-printed document, likely presented to the Defendant within a lengthy stack of admissions paperwork." He suggests that it is even more suspicious because "[t]here is an obviously gross disparity of bargaining power between the parties in situations like the instant case" and that when one party is a "healthcare services conglomerate" and the other is "residents and their families" who are "seeking necessary care for a loved-one from an unknown third party", then "arbitration agreements are not entered into by two commercially sophisticated parties seeking mutual benefits in order to promote commercial efficiency."

Even if an agreement is a "boiler-plate, pre-printed document," that alone does not render it unconscionable. *Id*. at 342-43 (noting that the fact that an arbitration clause appeared single spaced on the back of a preprinted form does not render it procedurally unconscionable). The agreement in question contains the following features: (1) it is a stand-alone agreement; (2) it consists of three pages printed in normal font; (3) there is a bold face all capital letter provision noting the agreement is not a condition of admission to the facility; (4) it provides no limitation on type or amount of damage claims; (5) there is no limitation on causes of action; (6) there is no suspect forum selection; (7) the agreement

19

provides no truncation of the otherwise applicable statute of limitations; and (8) ultimately, the terms are such that a person of ordinary experience and education is likely to understand them.

In other words, there is nothing to suggest that the agreement is "one-sided, oppressive and unfairly surprising" or that the dichotomy between the parties, a health care company and an individual seeking nursing home care, accompanied by his family in seeking that care, resulted in some sort of bargain that should not be enforced. *Conseco*, 47 S.W.3d at 341. For this reason, other courts applying Kentucky law have found that arbitration agreements similar to the one at bar and presented as part of the nursing home admission process were not procedurally unconscionable. *See, e.g., Nichols*, 2014 WL 4063823 at *9; *Abell v. Bardstown Medical Investors, Ltd.*, 2011 WL 2471210, *1–3 (W.D.Ky. June 20, 2011).

Moreover, the arbitration agreement is not, without something more, void against public policy. It is well established that there exists "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, ---U.S. ----, 132 S.Ct. 23, 25 (2011). Recently, the United States Supreme Court specifically rejected an argument that arbitration agreements can be voided for public policy reasons. *Marmet Health Care Center, Inc. v. Brown*, --- U.S. ----, 132 S.Ct.

1201, 1203–4, 182 L.Ed.2d 42 (2012). The high Court held: "'[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'" *Id.* (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. ––––, ––––, 131 S.Ct. 1740, 1747 (2011)). Neither 42 C.F.R. § 483.10 (setting forth resident rights in long term care facilities), nor any other public policy authority cited by Defendant trumps the FAA as Defendant suggests.

Nor does the Court agree with Belcher's argument that the agreement was one of adhesion because it did not provide protection against involuntary discharge or because the agreement specifies that DJS Adminsitrative Services will administer the arbitration – and Defendant has reason to believe that the ADR procedures used by the administrator of the arbitration are too closely connected to the proponent of the contract in this instance.[3] The fact that Defendant may now wish that he had bargained for what he views as additional protections or a different set of arbitration rules or administrators is not enough. "Mutual promises constitute

_____

[3] Belcher contends that there is a close relationship between DJS Administrative Services, who the contract specifies will conduct the arbitration using DJS rules of procedure and which lists two ADR procedures, one called "Kindred ADR" on its webpage and which Defendant contends is, "[i]n essence a nursing home's code that will be used to decide any disagreement between Kindred and Kindred residents." This speculation is insufficient to give the Court pause. Conspiracy theories have no place in litigation.

adequate consideration if a benefit is conferred to the promisor or a detriment is incurred by the promise." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citing *More v. Carnes*, 214 S.W.2d 984, 991 (Ky. 1948)). "An arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration." *Id.* (citing *Kruse v. AFLAC Intern., Inc.*, 458 F.Supp.2d 375, 385 (E.D.Ky. 2006); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir. 2005)); *Shadeh v. Circuit City Stores, Inc.*, 334 F.Supp.2d 938, 941 (W.D.Ky. 2004)).

Finally, Belcher argues that the contract is, from an evidentiary standpoint, unauthenticated and that, thus, there exists no admissible written contract as required to enforce such an agreement under 9 U.S.C. § 2, the Court is unpersuaded. Defendant has neither alleged nor provided evidence that the signature contained on the ADR Agreement is not his, and the court declines to afford him relief on this ground. *See Hanley*, 2014 WL 1333204 at *8 ("In urging dismissal, Defendant maintains that [the agreement] has not been properly authenticated. This assertion is, at best, confusing and, at worst, disingenuous. Defendant, who was herself present during the admissions process, has not alleged in any pleading or affidavit that the mark contained on the arbitration agreement is not representative of her signature"). Since he has provided

22

no evidence challenging the authenticity of the document, his argument in this regard is without merit.

## VI.

Ultimately, Defendant's attempts to attack the validity and enforceability of the arbitration agreement are contrary to established law and, thus, fall far short of requiring dismissal pursuant to Rule 12(b)(6). Rather, the Court concludes that Plaintiffs have borne their burden of establishing that a valid, enforceable agreement to arbitrate exists in this case. *See Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, UAW*, 97 F.3d 155, 158 (6th Cir. 1996). By motion, Plaintiffs have asked this Court to enforce the contract, compel arbitration, and enjoin Belcher from pursuing his claims against them in the state forum.

The parties have "agree[d] that any disputes covered by this Agreement . . . shall be resolved exclusively by an ADR process that shall include mediation and, where mediation does not successfully resolve the dispute, binding arbitration." [DE 1-1 at 1, Page ID#: 9.] The "Covered Disputes," section of the ADR Agreement provides as follows:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Center that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Kentucky and shall include,

23

> but not be limited to, all claims in law or
> equity arising from one Party's failure to
> satisfy a financial obligation to the other
> Party; a violation of a right claimed to
> exist under federal, state, or local law or
> contractual agreement between the Parties;
> tort; breach of contract; fraud;
> misrepresentation; negligence; gross
> negligence; malpractice; death or wrongful
> death and any alleged departure from the
> applicable federal, state, or local medical,
> health care, consumer or safety standards.
> Covered Dispute shall include the
> determination of the Scope of or
> applicability of this Agreement to
> mediate/arbitrate.

[DE 1-1, at 3, Page ID#: 10.]

Defendant's State Court Action alleges negligence, medical negligence, "corporate negligence", violations of long term care resident's rights, and negligence against the administrator. All of these claims clearly fall within the broad scope of claims encompassed in the "Covered Disputes" section of the ADR Agreement outlined above. Further, as plainly stated in the provisions of the ADR Agreement specifically cited above, any disputes regarding interpretation of the agreement are, if mediation is not successful, to be referred to the arbitrator for a decision.

While the FAA requires a federal court to stay their own proceedings, it does not specifically authorize federal courts to stay pending state court cases. *Great Earth Co., Inc. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Rather, the federal

24

court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act, 28 U.S.C. § 2283.  The Sixth Circuit has concluded that a district court's injunction of state-court proceedings after compelling arbitration does not violate the Anti-Injunction Act because the injunction fell "within the exception for injunctions 'necessary ... to protect or effectuate [district court] judgments.'" *Great Earth*, 288 F.3d at 894.  It concluded that "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court on this issue." *Id*.  Since enjoining the state proceeding is not barred by the Anti-Injunction Act and such injunction would serve to protect or effectuate this Court's judgments, Belcher is enjoined from pursuing the pending state court action before the Powell Circuit Court.

**VII.**

For all of the reasons stated above, Defendant Belcher's Motion to Dismiss shall be denied and Plaintiffs' Motion to Compel Arbitration and Enjoin Defendant from engaging in further state proceedings shall be granted.

Accordingly, **IT IS ORDERED**:

(1) That Defendant Belcher's Motion to Dismiss [DE 4] is **DENIED**;

(2)   That   Plaintiffs'   Motion   to   Compel   Arbitration   and Enjoin Defendant [DE 5] is **GRANTED**;

(3)   That   Defendant   shall   prosecute   all   of   his   claims arising   out   of   his   residency   at   Stanton   Nursing   and Rehabilitation   Center   in   accordance   with   the   terms   of   the arbitration agreement that he signed;

(4)   That   Belcher   is   **ENJOINED**   from   pursuing   the   pending state   court   action   against   Plaintiffs   before   the   Powell   Circuit Court;

(5)   That   this   matter   is   **STRICKEN FROM THE ACTIVE DOCKET**, and   following   the   conclusion   of   arbitration   proceedings,   either party   may   petition   the   Court   to   reopen   this   matter   to   take appropriate action as necessary.

This the 31st day of March, 2015.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge